ORIGINAL

1  COMPLAINT BY A PRISONER UNDER THE CIVIL RIGHTS ACT, 42 U.S.C §§ 1983

2

3  Name  Morris      Jack          L.

4  (Last)            (First)           (Initial)

5  Prisoner Number _____ C - 06409

6  Institutional Address ___ P.O. Box  7500

7  _____ Crescent City , Ca. 95531

8  ==================================================================

9  UNITED STATES DISTRICT COURT
   NORTHERN DISTRICT OF CALIFORNIA

10  Jack L. Morris

11  (Enter the full name of plaintiff in this action.)

12              vs.                                   Case No. 5640
                                                      (To be provided by the clerk of court)

13  G. Lewis, Warden,
                                                      COMPLAINT UNDER THE
14  Pelican Bay State Prison )                        CIVIL RIGHTS ACT,
                                                      42 U.S.C §§ 1983
15  et al.,

16
    _____
17  (Enter the full name of the defendant(s) in this action))      E-filing

18  [All questions on this complaint form must be answered in order for your action to proceed..]

19  I.    Exhaustion of Administrative Remedies

20        [Note: You must exhaust your administrative remedies before your claim can go

21        forward. The court will dismiss any unexhausted claims.]

22        A.    Place of present confinement  Pelican Bay State Prison

23        B.    Is there a grievance procedure in this institution?

24                    YES ☒   NO ( )

25        C.    Did you present the facts in your complaint for review through the grievance

26              procedure?

27                    YES ☒   NO ( )

28        D.    If your answer is YES, list the appeal number and the date and result of the

    COMPLAINT                          - 1 -

1    appeal at each level of review. If you did not pursue a certain level of appeal,

2    explain why.

3    1. Informal appeal _____ 13 4 - Passe d _____

4

5    _____ 2. First

6    formal level_____ 3 4 - Passe d _____

7

8    _____

9    3. Second formal level_ Appeal denied

10   Log No. 09-0859, (6-2- 2009 )

11   _____ 4 Third

12   formal level _____ APPeal denied,

13   _____ (9 - 15- 2009 )

14   _____

15   E.    Is the last level to which you appealed the highest level of appeal available to

16         you?

17              YES ☒    NO ( )

18   F.    If you did not present your claim for review through the grievance procedure,

19   explain why._____ N/A _____

20   _____

21   _____

22   II.   Parties

23   A.    Write your name and your present address. Do the same for additional plaintiffs,

24         if any.

25              See Attached Complaint

26   _____

27   _____

28   B.    Write the full name of each defendant, his or her official position, and his or her

COMPLAINT                          - 2 -

1    place of employment.

2    _See attached Complaint_

3

4

5

6    III.

7    Statement of Claim

8    State here as briefly as possible the facts of your case. Be sure to describe how each

9    defendant is involved and to include dates, when possible. Do not give any legal arguments or

10    cite any cases or statutes. If you have more than one claim, each claim should be set forth in a

11    separate numbered paragraph.

12    _See attached Complaint_

13

14

15

16

17

18

19

20

21

22

23

24

25    IV.    Relief

26    Your complaint cannot go forward unless you request specific relief. State briefly exactly

27    what you want the court to do for you. Make no legal arguments; cite no cases or statutes.

28    _See attached Complaint_

COMPLAINT        - 3 -

1

2

3

4

5

6

7    I declare under penalty of perjury that the foregoing is true and correct.

8

9    Signed this _28th_ day of _November_, 20 10

10

11    _Jack L. Morris_

12    (Plaintiff's signature)

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT                              - 4 -

Jack L. Morris C-06409
P.O. Box 7500 C2-122
Crescent City, Ca. 95531
In Pro Per

United States District Court
Northern District of California

Jack L. Morris
        Plaintiff

    V.

G. lewis Warden et.al.,
        Respondents

Case No. _____

Complaint

(42 U.S.C. § 1983)

## INTRODUCTION
### I.

1.   Now Comes Jack L. Morris (hereafter Morris)
plaintiff to this action, a prisoner confined at Pelican
Bay State Prison (P.B.S.P.) filing under Color of State
Law this civil rights complaint under 42 U.S.C. § 1983.
This court has jurisdiction under 28 U.S.C. § 1343.

(1)

2. Morris challenges his March 25, 2009 Re-validation and retention in the Security Housing Unit (SHU) based on alleged "gang activity".

3. Morris alleges:

    a. The decision to re-validate him based on gang activity lacks support of reliability OR sufficient evidence in violation of his due process rights;

    b. Morris' General Population (G.P.) presence does not threaten safety OR security of the institution, OR the safety of other inmate's, and;

    C. Morris' classification as a Mexican Mafia (EME) . . . . . member lacks support of re-Liable OR sufficient evidence in violation of Morris' due process rights.

## DEFENDANTS
### II.

4. K. Holland, chief Deputy Warden (CDW) California Correctional Institute (CCI);

5. M. Carrasco, CDW, CCI;

6. J. Gutierrez, facility Captain (capt.) CCI;

7. P. Miller, facility, Capt. CCI;

8. N. Grannis, chief Inmate Appeals, Director's level;

(2)

9. P.T. Smith, CDW, Pelican Bay State Prison (PBSP.);
10. J. Peterson, Lieutenant (LT.) CCI;
11. J. Gentry, LT. CCI, Institutional Gang
Investigator (IGI);
12. B. Medrano, Correctional Officer (c/o) CCI;
13. G. Adame, c/o CCI;
14. T. Turmezei, c/o CCI;
15. B. Kingston, Special Services Unit (ssu), Office
of Correctional Safety (ocs);
16. M. Ruff. Special Agent In Charge (sAe), ssu,
ocs;
17. S. Kissel, SSU, OCS;
18. J. Jakabosky, ssu, ocs;
19. G. Lewis, Warden P.BSP.;
20. F.A. Gonzales, Warden, CCI;

## STATEMENT OF FACTS
## III.

21. On June of 1979 Morris was convicted of
Second degree murder and subsequently sentence to
fifteen years to life in state prison with the poss-
ibility of parole.
22. On January 28, 2008 after twenty three years
of SHU confinement he was ordered release based on
a determination of inactive gang activity by the
Departmental Review Board (DRB).
23. On March 28, 2008 Morris was transferred
from P.B.SP SHU to the G.P. at CCI where he
remained a year without incident.

(3)

24. On March 18 2009, LT. J. Peterson, at CCI ordered Morris' removal from the G.P. and his placement into the Administrative Segregation Unit (ASU) based on alleged gang Activity.

25. Morris was informed he would remained in ASU pending investigation into possible 'gang activity' with the EME, and for 'posing A threat to the safety And Security of the institution, and the safety of other inmates! Morris was transferred from the G.P. :> IV-A facility to the IV-B facility S.H.U.

( 4 )

26. On March 20, 2009 Sergent (sgt) Tyree, IGI at CCI issued Morris Six (6) confidential Information disclosure from's (1030's), and One CDC-128B alleging Various gang activities by Morris; Specifically.

27. A CDC-128B chrono authored by Correctional Officer (C/o) G. Adame, dated March 20, 2009 alleging Morris' address book contained a torn piece of paper with a Validated EME Associate's name and prison number. Adame's was responsible for discovering, evaluating, accepting or denying the evidence used to re-validdte' Morris for alleged gang activity at CCI.

28. A Confidential Memorandum (Cm) authored by C/o T. Turmezei, dated March 17, 2009 where a Confidential Informant (CI) was told by an unidentified inmate Morris held an Influencial position with the EME on the IV-A facility. Turmezei was responsible for discovering evaluating accepting or denying the evidence used to Re-validate Morris for alleged gang activity at CCI.

29. A cm authored by T. Turmezei, dated December 6, 2008 where a CI identified Morris as being gwen respects by EME associates on IV-A yard. The CI identified these same alleged associate's as being in control of their respective housing units. Turmezei was responsible for discovery evaluting accepting or denying the evidence used to Re-validate Morris for alleged gang activity at CCI.

30. A CDC-128B authored by C/o B. Medrano, dated March 16, 2009 indicating a drawing located in Morris'

(5)

property containing the symbol "Eternal war shield, Aztec shield, G-shield." Medrano contain's Morris' possession of this drawing (symbol) reflects gang activity on Morris' behalf. Medrano, was responsible for discovering evaluating accepting or denying the evidence used to re-evaluate Morris for alleged gang activity at CCI.

31. A cm authored by T. Turmezei, dated March 12, 2009 were a CI identified Morris as being in control of the hispanic population on IV-A yard through EME influence; given respects by Sureños' aligned with the EME; and being in contact with EME members through EME associates to conceal Morris' activity; Turmezei was responsible for discovering evaluating accepting or denying the evidence used to re-validate Morris for alleged gang activity at CCI.

32. A cm authored by T. Turmezei, dated January 26, 2009 were a CI identified Morris as being part of a gang meeting with EME Associate's. The CI stated he knows it was a gang meeting through his knowledge of each of the participants gang influence. Turmezei, was responsible for discovering evaluating accepting or denying the evidence used to re-validate Morris for alleged gang activity. at CCI.

33. A CDC-128B authored by G. Adame dated December 3, 2008 where a handwritten note containing Twenty Five name's and CDC prison numbers of alleged EME members, and one alleged EME Associate, Morris. Adame asserts Morris' name on the list shows morris' continued gang activity. Adame's

---

1. not all sureños are identified as EME members or associates. CDCR does not lock up surenos for being sureños. not all surenos align ideologically with the EME. Sureños are individuals from southern California, but not exclusively.

(6)

was responsible for discovering evaluating accepting or denying evidence used to re-validate Morris.

34. Morris was told by sgt. Tyree he would return in Twenty-Four hours should Morris wish to be interviewed or submitt written rebuttal.

35. On March 23, 2009 Morris was issued a Validation Package by G. Adame, containing:

    a. A Validation Interview Notification and disclosure form indicating an investigation revealed sufficient evidence identifying Morris as an EME member, Via;

      1. TaToo's and Symbols; (supra para 30);
      2. Written Material (supra para 33);
      3. Association, (supra para 27); and,
      4. Informants, (supra para's 28 29 31 & 32).

    b. Memorandum authored by % Turmezei, to LT. J. Gentry, IGI ccI identifying information relied upon to re-validate Morris. J. Gentry is responsible for approving or denying information used to re-Validate Morris.

    c. Morris' six page rebuttal; declaration of inmate Bazurto;

    d. CDC-128-G DRB hearing releasing Morris to the G.P. as an inactive gang associate to the EME.

36. B. Kingston, SSU, acknowledged receipT of the

Validation package from LT. J. Gentry on March 25, 2009. Kingston determined the Seven (7) item's (supra p 4-7), submitted to validate morris as an active gang member met the re-validation requirements. Kingston was responsible for evaluating accepting or denying the evidence submitted.

37. On March 26, 2009 C/o Turmezei authored a CDC-128-B indicating OCS confirmed Morris' gang activity based on information submitted by C/o's G. Adame, B. Medrano and T. Turmezei;

38. On March 27, 2009 Morris appeared before Icc at CCI, denying any gang activity and requesting release to the GP. C/o M. Carrasco, Senior hearing Officer acted to retain Morris is SHU., restricting his yard exercise to walk alone Individual Exercise Module (IEM) cage; restricted him to single cell with only inmate Bazurto; No contact Visits, One hour behind the glass visits; No phone access, Limited privileges, Limited property, and Twenty Four hour cell confinement;

39. On April 1, 2009 Morris wrote M. Ruff, SAE, OCS, SSU, requesting a polygraph examination to prove his non-involvement in gang activity. Polygraphs may be administered by OCB in the course of investigation's. Morris denied gang activity stating the CI was inaccurate Incorrect and wrong. M. Ruff, is responsible for OCS, SSU and IGI personnel through-out the California Department of Correction and Rehabilitation (CDCR). Ruff was present at Morris' January 28, 2008 DRB SHU release, and is responsible for accepting or denying Morris' gang activity.

(8)

Mr. Ruff was notified Morris requested a polygraph examination and denial of gang activity by agents D. Jakabosky, SSU, and S. Kissel, senior SSU, OCS.

40. On April 3, 2009 Morris appeared before ICC at CCI, He denied any gang activity and requested release to the G.P., CCW K. Holland and Capt. D. Zanchi, senior hearing officer's acted to retain Morris in the SHU; referred him to the Classification staff Representative (CSR) for indeterminate SHU placement at P.B.S.P. or Corcoran state Prison (CSP) based on his gang classification. Morris asked K. Holland, if she possessed the authority to reverse IGI or OCS's gang classification regarding Morris; she said, No.

41. On April 20, 2009 D. Jakabosky, SSU, OCS, in response to Morris' April 1, 2009 letter to M. Ruff SAC, OCS, SSU stated he thoroughly read Morris' letter and recommened Morris debrief, Avoiding Morris' denial of gang activity and polygraph examine request. S. Kissel, Senior SSU, OCS confirmed Jakabosky's position and notified M. Ruff of the same. Agents M. Ruff, S. Kissel, and D. Jakabosky are responsible for reviewing gang information submitted by IGI units through-out California prison's.

42. On May 13, 2009 Morris filed an Inmate Parolee Appeal form (602) denying involvement in gang activity asserting the information relied upon was false fabricated, retalatory and racilly motivated. That the process and information violated the Castillo settlement and the Information did not indicate Morris' involvement in gang activity.

(9)

43. On May 20, 2009 Morris wrote the Director of Adult Institution's (DAI) S. Hubbard, seeking a polygraph examination for both himself and the CI to prove his non-involvement in gang activity.

44. On June 6, 2009 Morris' 602 was responded to by J. Gutierrez, Facility Capt. at CCI and K. Holland, CDW for IV-A and IV-B Facility, on behalf of F.A. Gonzales, Warden at CCI. Morris requested the 1030's used to classify him as an active gang associate be expunged from his prison file(s); Transfer to a prison in line with his point classification score; And release to the G.P.; Holland and Gutierrez were responsible for accepting or denying Morris' 602 based on the evidence of alleged gang activity; They denied Morris' 602. Warden F.A. Gonzalez, was responsible for approving or denying the action's of both Holland and Gutierrez at the second Appallete review.

45. On June 18, 2009 Morris dissatisfied with Second level Appallate review filed to the Third and finanl Administrative review.

46. On July 13, 2009 Morris received a response to his letter to the DAI. S. Albritton expressed concern for the process of gang validation referring Morris to the IGI at CCI or OCS. Albritton stated the DRB decision's are classification in nature, not investigative.

47. On July 29, 2009 Morris submitted a second letter to the OCS, Senior Agent S. Kissel, SSU, requesting a polygraph examine to address the

(10)

allegation's of gang activity at CCI. OCS is re-
sponsible for administering polygraph's and invest-
igating alleged gang activity of inmates in the
CDCR.

48. On September 15, 2009 Third level review of
of Morris' 602 was denied. Specifically, P. Miller
facility, Capt. on behalf of the OAI Greviewed
Morris 602 denying it; asserting, the procedural require-
ment's for determining Morris' alleged gang activity
was met after considering all submitted documents.
N. Grannis, chief Inmate Appeal's signed off on Miller's
determination, notifying both CCI warden, and
appeals coordinator at CCI.

49. On March 2, 2010 morris was issued a
New CDC-128-B-2 by G. Adame, at CCI identifying
Morris' new classification as an EME member.

50. On March 3, 2010 Morris was trans-
ferred from CCI SHU, to P.B.S.P. ASU without a
ESR endorsement. On March 25, 2010 Morris was
housed in the ASU-1 stand alone where all personal
property rights are extremely restrictive, including
Legal Material without a Confirmed Court dead-
line.

51. On September 2, 2010 Morris appeared be-
fore ICC at P.B.S.P. He denied any gang activity
and requested G.P. placement. P.T. Smith, senior
Hearing Officer and CDW, acted to retain Morris
in ASU-1 pending housing in the SHU. based on
alleged gang activity. Morris was placed on walk
alone yard, no contact visits, single cell status

(11)

no phone access, restrictive property rights. Smith told Morris he could gain release from the SHU by debriefing. Morris asked Smith if he could review and reverse IGI's and OCS's determination Morris was involved in gang activity and subsequent classification as an EME member, Smith responded, No.

52. An unidentified ICC member told Morris that Only OCS or IGI could reverse a gang determination.

53. Morris remains confined, indeterminably, in the SHU at P.B.S.P. based on the seven items developed at CCI (supra, p. 5-7). For alleged gang activity, and classified as a re-validated gang member.

# VERIFICATION
## IV.

I Jack L. Morris have read the complaint and the facts stated therein are true of my Knowledge except as to those matters stated on information and belief, and as to those matters I believe them to be true.

I declare under penalty of purjury that the foregoing is true and correct.

Dated  11-28    2010    /s/ Jack L Morris
Respectfully Submitted

Jack L. Morris
C-06409 / CZ-122

(12)

# PRAYERS FOR RELIEF
## V.

Wherefore, Morris having no plain Or speedy relief he request this Court:

1. Order defendants to expunge his prison file(s) Of false unreliable and insufficient information used in re-validating him as an EME prison gang member, involved in gang activity;

2. Order Morris released to the G.P. at an institution inaccordance with his prison point classification score;

3. Order Morris released to a prison close to his home, based on his point classification Score

4. Order defendants to pay, each and everyone individually and in their Official capacity, compensatory damages in the amount of #258,000.ᵘ;

5. Order punitive damages to be determined by the court;

6. Order declaratory relief appropriate with the sequences of this action;

7. Order injunctive relief appropriate with the sequences of this action;

8. Order cost and/or reasonable attorney fees, and;

9. Provide Any and ALL other relief this cout deems just and proper.

Respectfully Submitted

Dated 11-28 ,2010

by Jack L Morris
   Jack L. Morris
   C-06409 - C2-122

(13)



02 1M
00 0 4 21 7
MAILED F

PELICAN BAY STATE PRISON
5905 Lake Earl Dr
Crescent City CA 95532

RECEIVED

DEC ❡ 2010

RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Prose

U.S. Northern Dist. of Ca.
U.S. Courthouse
450 Golden Gate Ave.
San Francisco, Ca.  94102-3483

NAME: Jael L. Morris

DC NO: G-00409  HOUSING: C2-122

ELICAN BAY STATE PRISON
O. BOX 7500
RESCENT CITY, CA 95532



PELICAN BAY STATE PRISON
5905 Lake Earl Dr
Crescent City CA 95532

UNITED STATES POSTAGE

$ C2.92⁰

02 1M
0004217666   DEC 02 2010
MAILED FROM ZIP CODE 95531



RECEIVED

DEC 6 2010

RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

U.S. Northern Dist. of Ca.
U.S. Courthouse
450 Golden Gate Ave.
San Francisco, Ca.  94102-3483

HOUSING: C2-122

ON

2

48674

12-1-10

CONFIDENTIAL LEGAL MAIL